## NIETO'S HEIRS *v.* CARPENTER.

Where a permission to occupy certain lands, for grazing purposes, was granted by the Governor of California, under the crown of Spain, to a Californian, and after the death of the grantee or tenant, his heirs made application to the authorized officers of the Mexican Government, the then sovereign power, for a cession of the same land, setting forth the loss of the original grant of possession, made to their ancestor; upon which a decree was made, by the Mexican Governor, declaring them to be entitled thereto, and reciting that the Governor had seen the original grant to the ancestor, under which decree a grant, or deed, was made to the heirs: *Held*, that the latter was a recognition of the title in the ancestor, and not an original grant to the heirs.

The government, having thus, by a solemn decree, declared that the original title was in the ancestor, is estopped from denying such admission, or re-granting the premises to another.

The recitals in the latter grant must be governed by those of the decree, in conformity to which it was issued.

Nor is this conclusion altered by the fact that the grant to the heirs contained the usual conditions inserted in all original grants from the Mexican Government.

It follows, that where the heirs having made partition, and under the decree the grants were made severally to the heirs; that a grant made to the widow of one of the heirs (they having children,) in accordance with the decree, enured to the heirs of her deceased husband by their marriage, and that a sale by her, of the land, was void.

APPEAL from the District Court of the Third Judicial District, County of Monterey.

On the trial of this cause, the Court below, sitting as a jury, found the following facts:

"This cause having been submitted to the Court by the parties, and the Court, being sufficiently advised, finds that in the

year seventeen hundred and ninety, Manuel Nieto obtained a written permission, not a grant of the title, from Pedro Fages, the Governor of California at that time, under the crown of Spain, to graze cattle on a tract of land situated in the county of Los Angeles, in this State, and now known as the tract of land bounded on the south by the ocean, on the east by the river Santa Aña, on the north by the old road leading from San Diego to Monterey, and on the west by the river San Gabriel, containing thirty-three leagues; that by virtue of said written permission, the said Nieto entered upon said tract of land, in said year, with his cattle and other property, and laborers, and erected a house and corral thereon, and enclosed and cultivated one hundred and sixty acres, part of which land so enclosed and cultivated was on said tract, and a part adjoining thereto, on the north side thereof; that said Nieto continued there, so occupying said land, until his death, which occurred in the year eighteen hundred and four; that during said occupancy, he had a large amount of cattle and horses upon said tract, for the purpose of grazing thereon; that at his death, said Nieto left four children—José Antonio, Juan José, Manuel, and *Antonio Maria, the latter of whom is the father of plaintiffs;* that in the year eighteen hundred and fifteen, the father of the plaintiffs married Josefa Cota, the mother of the plaintiffs; *that after the death of Manuel Nieto, his said children continued to occupy the tract of land above described, with boundaries as above specified, by and under the same permission given their father, and in the same manner, until the year eighteen hundred and thirty-two, when said José Antonio and said Antonio Maria died; that from 1796 until 1833, the said tract, with the said boundaries above specified, were known and respected by the neighbors;* that no part of said land was inclosed, only as aforesaid; that in the year 1833, Juan José Nieto, Manuel Nieto, Josefa Cota, and Catarina Ruis, widow of said José Antonio, agreed verbally to make a partition of said land, as above bounded, and to apply to José Figueroa, then Governor of California, for the grant of the same, according to the division; that division was thereupon then made between them, of said land; that said Governor did make and issue his several grants, dated May 21, 1834, one grant to each of said parties, for the portion and parts of said tract allotted to them by said partition; that by said grant, Juan José Nieto had two parcels thereof, known as the "Coyotes" and "Alamitos;" to Manuel Nieto, one part thereof, known as "Los Sierritos;" to Catarina Ruis, one part thereof, known as the "Bolsas;" that said part allotted upon said division, and granted to Josefa Cota, is known as the "Santa Guertridis," being the land sued for in this suit; that no grant had at any time been made or issued to said Manuel Nieto in his lifetime, or to his children after his death, or said persons, only as above-mentioned; *that the children of said Manuel Nieto, when so occupying the land as aforesaid,*

*claimed to be owners thereof;* that in the year 1827, Juan José Nieto claimed that the land had been granted to his father, but that, in the year 1820, he had been ordered by the Governor (Sola) of California to kill the horses thereon, or leave the rancho, and in obedience thereto he had killed the horses. That after the said grant of said land to said Josefa Cota, *she continued to live upon said land with her children,* (the plaintiffs,) *until the twenty-seventh day of December,* 1843, when she conveyed the same by deed to the defendant, for a full and valuable consideration, with notice of no other title than the said grant made to her by the said Governor; and that the said defendant has continued in possession thereof from the time of said purchase to the present time; that between the time of said purchase by said defendant and the year 1851, the defendant made improvements on said land of the value of five thousand dollars, with the knowledge of the plaintiffs, without objection by them, or claim to said land being by them made; that she received, in part payment of said land, money, which was by her applied to one-third of the payment of a tract of land which she purchased in Los Angeles, on which she continued to reside with her children, the said plaintiffs, until her death, since which time the said plaintiffs have continued to occupy and enjoy the same; that said Josefa Cota died in the year 1847; that the plaintiffs were born as follows: Petra, in the year 1816; Concepcion, in the year 1819; Diego, in the year 1823; José Antonio, in the year 1828; Maria Dolores, in the year 1830; and José Jesus, in the year 1831."

Upon these facts, the Court states the law to be, that the plaintiffs have no title to the land sued for in this suit, and are not entitled to recover. That the defendant is entitled to the land, and does not unlawfully detain the same. Wherefore, the Court finds for defendant, and directs judgment accordingly.

The petition of Grijalba is as follows:

"*To the Superior Political Chief:*—The citizen, Luciano Grijalba, a native of the State of Sonora, and now a resident of this Territory, with a legal power of attorney from the citizen Juan José Nieto, whose rights and actions he represents before your Excellency, with all due respect, and in the most effective manner, would make known that, in the year 1784, his Excellency the Governor, Pedro Fages, granted title to Manuel Nieto, and the possession of the land contained in the map, which, with all due respect, give; and that his heirs having possessed, amongst whom, Juan José Nieto acted as the head, they continued in peaceable possession, occupying said land as the legal owners; in this manner they have continued for more than twenty-nine years; they have * * * until the present date * * * are * * * interrupted in the enjoyment of their rights.

"The title-papers having been misplaced, the proof of the title they had to the land, he applied many times to the Superior Political Chief, that by virtue of the existing proofs in the archives, he should give him a new title, but in vain he renewed his petition, until the kindness of your Excellency gave him attention, by giving him a testimonial of the only evidence found in the archives, but which is sufficient to prove the legality with which he has occupied the above mentioned land. As the boundaries are set out in the proceedings which I herewith enclose, being comprised in five useful leaves, to the end that, admitting the same to be sufficient and legal, you will be so kind, through considerations of justice, and as I have supplicated, you will grant him the corresponding title, and command that judicial possession be given him. And as I am desirous that all the heirs should enjoy the favor granted to their deceased father, I therefore pray your Excellency, if there should be no obstacle in the way, you would order that separate titles be given to each one for the part that corresponds to him, according as the same is laid down in the map, to wit: *The place called ' Santa Gertrudes,' to Josefa Cota, and her children, as widow of Antonio Maria Nieto, deceased;* the place called 'Las Bolsas' to Doña Catarina Ruis, and her children, as the widow of the deceased José Antonio Nieto; the place called 'Sierritos' to Doña Manuela Nieto; the balance, comprising the places called the ' Coyotes,' 'Alamitos,' P***alto, V., to him whom I represent, Dn. José Nieto, who, as head of the family, has resolved to effectuate these partitions, for the benefit of his ******* and to avoid all pretexts for litigation, and would humbly pray that each one be put in possession of the part that to him, under this view of the subject, corresponds.

"I supplicate your Excellency to be so kind as to accede to this, my solicitude, whereby I shall receive peace and justice, which I have implored.

"LUCIANO GRIJALBA.

"SAN DIEGO, 26th July, A. D. 1833."

The next in order is the decree of José Figueroa, of twenty-seventh July, 1833:

"Having seen the present petition, and having known, from public notoriety, the peaceable and undisturbed possession which has been enjoyed by Manuel Nieto, and his heirs, of the land described on the map; having seen the proceedings wherein was contained the grant of said land, by his Excellency Governor Pedro Fages, to the said Nieto, complying with every requisite deemed necessary, in strict conformity with the laws and regulations upon such subjects, under the considerations expressed therein, they are *declared owners in fee simple:* To José Nieto, that

of all the 'Otes,' 'Alamitos,' and the 'Palo;' to Doña Manuela, that of 'Cerritos;' to Doña Josefa Cota, the widow of Antonio Maria Nieto, that of 'Santa Gertrudes;' to Dona Catarina Ruis, widow of said José Antonio, of the place called 'Bolsas.'

"Let the corresponding Judge give judicial possession of the lands prayed for, communicate the same to the parties interested, and, as the title-papers cannot be made out until I arrive at the capital, give them a certified copy öf this decree, provisionally, which will serve as a safeguard, to protect the rights of the parties.

"M. José Figueroa, Superior Political Chief of the Territory, and thus he commanded, decreed, and signed, which I hereby certify.

"JOSE FIGUEROA.
"AUGUSTIN V. ZAMORANO, Secretary."

"MONTEREY, Dec. 21, A. D. 1833.
"Fulfill the order contained in the foregoing decree, giving the titles, and directing in them that the judicial possession be given, particularly when taking into consideration *the ancient and remote concesssion and possession which they have had of the said lands.*

"Sñr. Don José Figueroa, Commanding Brigadier-General, Superior Political Chief of the Territory, thus he commanded, and decreed, and signed, which I certify.

"JOSE FIGUEROA.
"AUGUSTIN V. ZAMORANO, Secretary."

After which is the following deed to Josefa Cota:

"José Figueroa, Brigadier-General of the Mexican Armies, Commanding Inspector-General, and Superior Political Chief of the Territory of Upper California:

"Whereas, Doña Josefa Cota, widow of Don Antonio Maria Nieto, has shown that *she is entitled to the estate of the deceased Manuel Nieto,* and after taking into consideration the ancient and peaceable possession which she has of the place known by the name of 'Santa Gertrudes,' adjoining the Mission of San Gabriel, and the ranchos 'Los Coyotes' and 'Cerritos,' the previous measures and investigations having been made agreeably to the laws and regulations on the subject, exercising the powers conferred upon me by the decree of the twenty-seventh July, of the previous year, I have, in the name of the Mexican nation, declared to the property of the before-mentioned land, declaring to her the ownership thereof, by these presents, and that she be put in legal possession thereof, by these presents, exactly in conformity with the resolutions on this subject, made by law, and subject to the following conditions, to wit:

" 1. That she will submit to the regulations which are to be made for the distribution of vacant lands, and that, in the meantime, neither she, nor her heirs, shall have power to divide or sell the same; she shall not impose any land-tax, entail reversion, or mortgage, or any other burden, be the same for pious uses or in mortmain.

" 2. She may enclose it without prejudice to the crossings, highways, and privileges; she shall enjoy it freely and exclusively, destining it to the use or cultivation which may best suit her, but within a year she shall build a house, and it shall be inhabited.

" 3. She shall solicit the respective magistrate to give her legal possession, in virtue of this title, by whom the boundaries shall be traced out, in the limits of which she shall put, besides the land-marks, some fruit-trees, or wild ones of some utility.

" 4. The land of which donation is made consists of five *sitios*, (square leagues,) as the respective map explains. The magistrate who gives possession, shall cause the same to be measured according to law, to show the boundaries. The map accompanies the proceedings, and the overplus shall remain to the nation for the necessary uses.

" 5. If she shall violate these conditions, she shall lose her right to the land thus granted, and it may be denounced by another.

" I consequently command that these presents, being held firm and valid, a record be made thereof in the respective book, and they be delivered to the party interested, for her security and future ends.

" Given in Monterey, on the twenty-second day of May, A. D. 1834.                        JOSE FIGUEROA.

" AUGUSTIN V. ZAMORANO, Secretary."

Plaintiffs appealed.

This case was first decided in October Term, 1856, but a rehearing being granted, was finally decided at this Term.

*Brent and Hepburn* for Appellants.

*J. R. Scott and Baldwin and McDougall* for Respondent.

[The briefs of counsel having been allowed to be withdrawn, under order of Court, to be used on the new trial ordered, the Reporter is unable to insert them.]

MURRAY, C. J., after stating the facts as above, delivered the opinion of the Court on the first hearing of this cause—HEYDENFELDT, J., and TERRY, J., concurring.

We shall not take up the arguments of the counsel in the

order in which they were made, as it will not be necessary to pass on all the points raised.

The finding of the Court below, that Manuel Nieto, the ancestor of the plaintiffs, entered into possession by virtue of a permission, or license, from the Spanish Government, to graze his cattle thereon, and not under a deed, or grant, is undoubtedly correct, if drawn alone, from the parol evidence adduced to rebut the presumption of a grant which would arise from his ancient possession and occupation ; for the presumption of a grant arising from these circumstances, like any other presumption, may be rebutted by proof.

The finding of the Court, however, in the present case, as we think, was against the legal effect of the decree of July 27, 1833, which expressly recites that the land in question had been granted to Nieto, and that he, the Governor, had seen the proceedings wherein was contained the grant of said land by his Excellency Governor Pedro Fages.

Admitting, for the sake of the argument, Nieto never had any title to land in dispute, except a mere permission to occupy, in other words, that he was a mere tenant-at-will of the Spanish crown, still it cannot be denied, that even if the fee was in the government of Mexico, at the date of this decree, she would be estopped from denying the title of Manuel Nieto and his heirs. In other words, whether the land belonged to Mexico, or not, Figueroa, as the political chief of the territory, had the authority to bind the government by his acts or admissions in relation to the public lands, and having, in a solemn decree, declared the title of said lands was originally in Manuel Nieto, the government was estopped from denying such admission, or re-granting the premises to another. When this decree, which is the foundation of the subsequent grant, is examined in connection with the petition of Grijalba, and the grant to Josefa Cota, all doubt upon the subject is at once relieved.

The petition has already been set out, and states, in substance, what is published in the decree, viz. : that Manuel Nieto held the land in question by a grant which had been lost. The deed recites :

" That whereas, Josefa Cota, wife of Don Antonio Maria Nieto, has shown that she is entitled to the estate of the deceased, Manuel Nieto, and, taking into consideration the ancient and peaceable possession which she has had of the place," etc.

How had Josefa Cota shown herself entitled to the estate of her husband ? Certainly in no other way than by the petition of Grijalba, and if entitled to the estate, what was her interest ? Simply such as might arise by reason of her position, as the natural and legal guardian of her children, the infant heirs of Manuel Nieto, deceased.

The deed goes on, and recites that it is made in conformity

with the previous decree of July 27th, 1833. No new title is attempted to be given, but, as we think by reference to this decree, it was the intention of Figueroa to declare the heirs of Manuel Nieto to be the owners of the land by virtue of a preexisting deed, and to assign to each one his share, by way of partition, as he most undoubtedly had the right to do.

The argument that the document through which the plaintiffs claim is not a grant, but a simple recognition of title, is strengthened by the fact that different words are employed in it from those ordinarily used. The depositions of C. E. Carr, Clerk of the United States District Court for the Southern District of California, and Capt. H. W. Halleck, both of thom have been officially connected with the ancient records of California, and have examined them, show that the word *conceder*, to grant, was technical, and that the word *declarar*, to declare, had probably never been used except in the single case of the Nieto grants; and that these grants ordinarily contained the provision of subjection to the approval of the Assembly.

It is contended that the fact that the deed to Josefa Cota contains conditions, the non-compliance with which subjects the land to forfeiture and denouncement, is an argument going to show that the Governor believed he was making a new grant, instead of declaring the title to be in the heirs of Nieto, by a prior one; otherwise, these words would not have been inserted, as he had no power to annex conditions to a previous perfect title. The answer to this is, that the deed, as before said, was made in conformity with the decree, and as the title was admitted to be in Nieto, the conditions were of no effect, and ought not properly to have been inserted in the document.

This view of the legal effect of the grant by Figueroa to Josefa Cota, would be conclusive upon the rights of the parties, were it not for a fact in the record upon which there appears to be no finding of the Court, and which seems not to have entered into consideration in the decision of the case below; that is, that the sale to Carpenter, the grantor of the defendants, was made in pursuance of a decree of the Court of First Instance of Los Angeles, and that the Judge of said Court made said order of sale in conformity with the direction, in writing, of Micheltorena, at that time Governor of California, vested with plenary powers. It is in evidence that these orders were based upon the representation of Josefa Cota, the natural guardian of the infant heirs, and that the land was sold and the proceeds applied to their maintenance and support.

Now, whether the Court of First Instance had the inherent power to order a sale in such cases or not, is a matter of little consequence, inasmuch as the proceeding was authorized by the Governor, who was vested with all power, and whose acts the law presumes to have been done correctly.

On this point we are satisfied that the plaintiffs are not entitled to recover, and although the judgment below was against them, for different, and as we suppose wrong reasons; still, as the result is correct, we will not disturb it.

On the re-hearing at this Term, MURRAY, C. J., delivered the opinion of the Court—TERRY, J., concurring.

In the previous opinion of this Court, the judgment of the District Court was affirmed, not upon the view taken of the case by the Court below, but on the ground that the sale of the property in question by Josefa Cota was authorized by the Governor of the Territory and a Judge of the First Instance.

Upon a petition for a re-hearing, our attention has been called to the fact that the defence on which our opinion was predicated, was abandoned in the Court below. Under these circumstances, the judgment must be reversed; and as it appears from the record, that the defendant may have a defence to the action on the ground assumed by this Court as the basis of its former decision, a new trial is ordered.