[Civ. No. 25331. Second Dist., Div. One. Aug. 25, 1961.]

Estate of FANNY B. HINCKLEY, Deceased. DEPART-
MENT OF MENTAL HYGIENE, Appellant, v.
CHARLES F. BLACKSTOCK, as Trustee, etc., Re-
spondent.

Stanley Mosk, Attorney General, and Edward M. Belasco,
Deputy Attorney General, for Appellant.

F. Gile Tiffany and Sheridan, Orr, Barnes, Duval & Benton
for Respondent.

WOOD, P. J.—The Department of Mental Hygiene of the State of California (referred to herein as the department) petitioned the superior court for an order instructing respondent, as trustee of a testamentary trust, to pay to the department from the trust funds specified amounts for the care and support of Louis L. Barnes, an incompetent person, who is a patient in a state hospital. The order upon the petition was adverse to the department. The department appeals from the order.

Under the provisions of the will of Fanny B. Hinckley she gave her property to respondent in trust, for certain purposes, during the life of her brother Louis L. Barnes. Her will was admitted to probate on July 12, 1945. The decree of distribution, distributing the property to respondent as trustee and stating the provisions of the trust, is not in the record on appeal. It will be assumed, however, that the provisions of the trust as stated in the decree of distribution are the same as the provisions of the will with respect to the trust provisions. It will also be assumed that the decree of distribution was made in 1946 and that respondent has been trustee since that time.

Part of her will was as follows:

"ARTICLE TWO

"I give, devise and bequeath all of my estate, of whatsoever nature or kind, be it real, personal and/or mixed, and wheresoever situated, to CHAS. F. BLACKSTOCK, of Oxnard, Ventura County, California, IN TRUST, for the following uses and purposes in relation to the same: . . .

"(d) Of and from the net income from the said trust estate, the Trustee shall pay to my brother, LOUIS L. BARNES, the sum of Forty Dollars ($40.00) per month, payable monthly, during the lifetime of the said LOUIS L. BARNES, and in the event that the income of my said estate does not equal the sum of Forty Dollars ($40.00) per month, then the Trustee shall pay said sum monthly out of the income and/or principal of this Trust.

"(e) In the event of illness, accident or other want or necessity, the said Trustee may in his or its uncontrolled discretion pay to or for the use of said beneficiary such portion or portions of the principal as the said Trustee may deem necessary for such emergency or emergencies. . . .

"(g) No interest of any beneficiary of this Trust, nor any part of such interest, shall in any event be subject to sale,

assignment, hypothecation, or transfer by any beneficiary, nor shall the principal of the trust estate hereunder, or the income arising therefrom be liable for any debt of any beneficiary, or subject to any judgment rendered against any beneficiary, or to the process of any court in aid of execution of any judgment so rendered, and all of the income and/or principal under this Trust shall be transferable, payable and deliverable only to the beneficiary designated hereunder at the times entitled to take same under the terms of this Trust, and the personal receipts of said designated beneficiary shall be conditions precedent to the payment or delivery of the same by said Trustee to such beneficiary. . . .

"(k) Upon the death of my brother, the said LOUIS L. BARNES, the aforesaid trust shall terminate and the corpus of said estate shall be distributed by my Trustee as follows: . . ."

The will provided that upon termination of the trust the corpus of the trust should be distributed to nine designated persons—with specific money bequests to eight of them (including respondent), and a bequest of furniture to one of them. The will also provided that if the corpus of the trust exceeded the total amount of the bequests then each beneficiary, except the one receiving the furniture, should receive a share of the excess in the proportion that his bequest bears to the corpus of the trust. She also provided in the will that her brother Louis L. Barnes might occupy her furnished house if he desired to do so.

The testatrix knew that her brother was an alcoholic and had been an inmate of a mental institution. She informed respondent that it was her desire to limit the amount made available to the brother as closely as possible to the amount set forth in her will ($40 a month), and that he not be given too much money. The testatrix did not tell the trustee at any time that it was her desire or intent to support Barnes by means of such payments; but, on the contrary, all her discussions with the trustee negatived such intent.

The brother was committed to a state hospital in November 1948. Soon thereafter the trustee began making payments of $40 a month to the department, and continued making those payments until approximately August 1954, when he paid $75 a month for three months. In November 1954, the trustee began paying $111 a month, and continued those payments until January 1956. Then he made payments of $95 a month until November 1956, at which time he paid $419

which the department claimed should be paid. From November 1956 to January 1960, he paid $122 a month. Thereafter to the time of the hearing he paid $150 a month.

The trustee testified to the effect that the department accepted $40 a month for a long time and did not say anything indicating dissatisfaction; thereafter the department asked him to pay a certain amount, and he paid the amount several times; finally the department raised the amount so high ($183 a month) that he refused to pay it; he, as trustee, in exercising his judgment and discretion, is willing to pay $150 a month; in view of the fact that she told him that she wanted him to use his judgment as to how much he paid, he is of the opinion that $150 a month is sufficient; in determining the amount to be paid by him as trustee he took into consideration the law that a sister is not liable for the support of a brother, and that since the sister was not liable, her trustee was not liable except for the $40 a month; he paid more than $40 because he was given that discretion as the trustee.

The department claimed that a balance of $1,145 was due as of March 30, 1960. The eleventh account of the trustee showed that the amount of cash in the trust fund as of December 31, 1959, was $1,943.88. The income of the trust consists of stock dividends and house rent. The monthly income is approximately $200.

As above shown, the will provided that the brother might occupy the furnished house. It appeared to the trustee that since the house was not occupied by the brother, it should be rented in order that the brother might have the benefit of the rental in lieu of the occupancy of the house. In carrying out the intent of the testatrix that the brother should have the use of the house, in addition to the $40 a month, the trustee rented the house and paid the rental to or in behalf of the brother. The house was rented at first for $30 a month; then for $55 a month; and for some time it has been rented for $60 a month.

The instructions of the trial court to the trustee were as follows: The trustee is required to pay to Louis L. Barnes or to the hospital, for his personal account or use, $40 a month or so much thereof as the trustee deems reasonably required for such personal use and the balance to the hospital for the care and maintenance of Louis L. Barnes. The trustee possesses absolute discretion with respect to what additional sums should be paid from the income of the trust estate to the department

for the care, support and maintenance of Louis L. Barnes, the same as the testatrix "might or could do, if living." The trustee has exercised his discretion properly and fairly and there is nothing due or owing from the trustee or the trust estate to the Department of Mental Hygiene for the care, support and maintenance of Louis L. Barnes.

Appellant contends in effect that the amounts demanded by it must be paid by the trustee, and that the trustee has no right to exercise any discretion with respect thereto.

Respondent asserts that the testatrix, the sister, was under no duty to support the brother (Welf. & Inst. Code, § 6650); that she did not intend to provide for his support; and that under the provisions of the will, and the circumstances here, it was the duty of the trustee to exercise his discretion. He asserts further that the only enforceable right which the brother has against the trustee is the right to receive $40 a month and to live in the furnished house; that the brother could not compel the trustee to pay for his support, nor compel the trustee to pay an additional amount in the event of illness of the brother; that the department has no greater rights than the brother has; that the trust did not create a wholly independent set of rights transcending the contemplation and intent of the testatrix. It appears that the trustee has voluntarily complied for several years with requests of the department for payments on behalf of the brother—the monthly amounts of the requests have increased from the original $40, to $75, to $111, to $122, to $150, to $183. After the trustee had voluntarily paid for several years the various increased amounts, as requested by the department, and when the last request of $183 a month was approaching nearly five times the original amount of $40 a month, he considered that the amount of the last request was too high and he declined to pay it. He had been paying $150 a month and he stated that in his opinion that was sufficient, and he was willing to pay that amount. The department, however, took the position that the trustee was required to pay amounts as specified by the department, irrespective of the provisions of the will (or trust) regarding the discretion of the trustee as to payment of more than $40 a month. It appears that, over a period of several years, the trustee exercised his discretion in liberal cooperation with the department, but, when the trustee declined to pay the last increase which he regarded as being too high, the department elected to demand exactness on a

strictly legal basis as to the rights of the brother to support under the provision of the will (trust). The department states in effect that, in presenting the contention herein, it is not asserted or implied that the trustee acted in an improper manner—but it is asserted only that the legal position taken by the trustee concerning his discretion under the will (and affirmed by the court) was erroneous as a matter of law.

Section 6650 of the Welfare and Institutions Code provides that the "husband, wife, father, mother, or children of a mentally ill person or inebriate, and the administrators of their estates, and the estate of such mentally ill person or inebriate, shall be liable for his care, support, and maintenance in a state institution of which he is an inmate." It is to be noted that a sister is not named therein as a person who is liable under that section.

Appellant (the department) relies upon *Estate of Lackmann*, 156 Cal.App.2d 674 [320 P.2d 186]. In that case a mother established a testamentary trust for her son, who was an inmate of a state hospital. The trust instrument provided [p. 680] : "I desire that my trustee provide, out of the income of my properties . . . for the *proper care, support and maintenance of my son*, George Lackmann, and I vest in my said trustee complete and absolute discretion as to how much he should expend from the trust funds for the proper care, support and maintenance of my said son; . . ." (Italics added.) The trustee refused to make any payment for George's care. The court said (p. 678) : "We are here dealing with the obligation of a trustee to administer the trust as required by the trust instrument." The court, after referring to the trust provision that the trustee had absolute discretion, said (p. 678) : "[S]uch discretion is not an arbitrary one and one which would permit the trustee to provide no support whatever for George and to throw him on the charity of others or of the state." It was also said therein (p. 678), quoting section 2269 of the Civil Code: "A discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion, but may be controlled by the proper court if not reasonably exercised, unless an absolute discretion is clearly conferred by the declaration of trust." In quoting from another case, the court said (p. 680) : "[T]he basic inquiry, whenever the exercise of a trustee's discretion, absolute or otherwise, is challenged, is always whether the trustee acted in the state of mind contemplated by the trustor." The court also said (pp. 680-681) : "It is clear from the will that the testator's primary

desire in the creation of the trust was that George receive proper care and while the trustee was given complete and absolute discretion in determining how or in what manner that care was obtained, his discretion was necessarily limited to there being care supplied and to its being proper.'' In the cited case, the reviewing court upheld the order of the trial court requiring the trustee to pay for the support of George.

It thus appears that in the cited case the mother, who was liable under the code section for the hosptial care of her son, expressly provided in the trust for the proper care and support of the son; the son was in the hospital before the mother died; the mother intended that the trust fund which she created should be available for the full and proper care and support of the son; the trustee, having refused to pay any amount, was not reasonably exercising his discretionary power, but was abusing and arbitrarily exercising such power; and the court, under those circumstances was required (pursuant to Civ. Code, § 2269) to control the discretionary power conferred upon the trustee.

 The present case is distinguishable from that cited case. The testatrix herein, who was the sister, was not liable under the code section for the hospital care of her brother. She did not provide in her will (trust) for the support of her brother. She provided in her will that the trustee should pay a definite amount each month to the brother, namely, $40. In addition thereto she provided that the brother should have the right to occupy her house. Those provisions, of course, were not adequate to provide for the full support of the brother, and it is clear that the sister did not intend thereby to provide for his full support or to make a fund available therefor. There was a provision in the will that in the event of illness of the brother, the trustee might, in his uncontrolled discretion, pay from the principal such amount as the trustee might deem necessary for such emergency, but that provision did not create a trust estate for the brother or make a fund available for his support. It is clear that the sister did not intend thereby to provide for the full support of the brother. In the present case the trustee did not refuse to pay, but on the contrary he paid liberally and far beyond the $40 he was required to pay. He continued to pay for many years according to the increased demands of the department until, in his opinion, the last increase was too high. The provision in the will giving the trustee discretionary power was intended, of course, to have some meaning. The trustee had the duty under

the provisions of the will (trust) to exercise his discretion. As stated in the *Lackmann* case, the basic inquiry, when the trustee's discretion is challenged is whether he acted in the state of mind contemplated by the trustor. Also, as stated in the *Lackmann* case, we are dealing here with the obligation of the trustee to administer the trust as required by the trust instrument. Since it is clear that the sister did not intend to provide for the full support of the brother, and since she was not liable under a statutory provision for his support, and since the trustee exercised his discretion reasonably, it seems clear that the trustee in exercising his discretion acted in the state of mind contemplated by the sister and that he performed his obligation as a trustee as required by the trust instrument. The trial judge's finding that the trustee has exercised his discretion properly and fairly is supported by the evidence. The instructions to the trustee were proper.

Reference should be made to another question that arises herein, but is not presented by the parties. Signed "Instructions to Trustee" were filed on August 3, 1960. Signed "Amended Instructions to Trustee" were filed on August 25, 1960. Notice to appeal, filed on October 19, 1960, states that the appeal is from the amended instructions entered on August 25, 1960. A recital in the amended instructions states in effect that the amendment was made to correct a typographical error in the first instructions, namely, to change the word "trustee" (in a recital) to "trustor." The instructions in the second document were exactly the same as the instructions in the first document. Since the amendment merely corrected an obvious typographical error of slight significance in the recital part of the first document, and since the change left the original instructions effective, a question arises as to whether there was a timely notice of appeal—whether the time for appeal commenced on August 3. (See *George* v. *Bekins Van & Storage Co.*, 83 Cal.App.2d 478, 481 [189 P.2d 301].) In view of the above conclusion, however, it is not necessary to determine this question.

The order is affirmed.

Fourt, J., and Lillie, J., concurred.